## PAUL SEARS & others *vs.* RUFUS WILLS.

If a cargo which is subject to a lien for the freight by an express provision in the charter party is delivered unconditionally, upon the bills of lading, and the larger portion thereof, with the knowledge and consent of all parties, is discharged into a ship bound for a foreign port, and there is no suggestion of an intention to rely upon the lien, the consignee being then in good credit, the lien is thereby waived.

If a lien for freight is waived, under the belief that the consignee is solvent, and his estate subsequently proves to be insolvent, this does not amount to such proof of mistake as to entitle the owners of the ship to relief in equity.

BILL IN EQUITY, praying that the defendant, who is administrator of the estate of Augustine Wills, deceased, may be decreed to pay to the plaintiffs the balance due on account of certain freight money.   The following facts were agreed :

In October 1856 the plaintiffs, being the owners of the ship "Bold Hunter," chartered her to Tuckerman, Townsend & Co., merchants, of Boston, for a voyage from Boston to Calcutta, and thence to Boston, at the rate of fifteen dollars and fifty cents per ton on whole packages, and half rate on loose or broken stowage, on the cargo laden on board at Calcutta, "charter payable one half in five, balance in ten, days after discharge in Boston ; said credit in payment of charter not to impair ship owners' lien on cargo for freight."   The charter party also contained a provision that the freight or merchandise to be laden should be bound for the covenants and agreements of the charter party.

On arrival in Calcutta, the agents of the charterers did not think it expedient to load the ship on their account, and

transferred the charter party to Wills & Co., who signed an agreement on it to load the entire capacity of the ship, except for fifty bales of hides, hereinafter mentioned, at eleven dollars per ton, all the other conditions to be in accordance with the terms of the charter party. Under this agreement, Wills & Co. shipped goods for account and risk of divers persons, and amongst others for account and risk of Augustine Wills, the defendant's intestate, for whom they were agents in Calcutta, to the amount of about $150,000. The master of the ship consented to this arrangement, and signed bills of lading, at eleven dollars per ton, on the execution and delivery to him, by the agents of the charterers, of an agreement to put sufficient goods on board to cover any deficiency between the said rate of freight and the rate of the charter party. In pursuance of this agreement, the agent shipped fifty bales of hides on account of Tuckerman, Townsend & Co.; the residue of the cargo being furnished by Wills & Co.

On the 12th of October 1857 the ship arrived at Boston, and Tuckerman, Townsend & Co. passed over the bills of lading of the merchandise on freight to the owners of the ship, in part settlement of the charter money, the plaintiff Sears undertaking to collect the same. Soon after her arrival, and while Augustine Wills was living, the discharge of the cargo was begun, under the direction of the defendant, as his agent, and was completed on the 7th of November. All the goods consigned to Augustine Wills were delivered to the defendant, as his agent during his life, and as the representative of his estate after his death, which occurred on the 2d of November; and the larger portion thereof, amounting in all to about $100,000, were discharged, by his request and with the consent of the plaintiffs, into a ship bound to London, which was hauled alongside of the Bold Hunter, the owners being informed that these goods were to be shipped therein to London. During the discharge and delivery, no intimation was given by the master or owners to the defendant of an intention to rely upon a lien on the goods for the payment of freight; and no mention was made of any understanding or agreement touching a lien thereon. Augustine

Wills was then in good credit; and, on October 26th, upon a representation by Sears that it would be an accommodation, the defendant paid to him $5000, as an advance on account of freight. After the expiration of five and ten days from the discharge of the cargo, the plaintiffs repeatedly applied to the defendant for the payment of the balance due for freight, at the reduced rate of freight, which amounted to $9948.57. This was refused at first on the ground that nothing could be done until administration was taken out, and afterwards, that the estate might prove insolvent. The estate was afterwards declared insolvent.

Upon these facts, and others which are now immaterial, the case was reserved, by *Merrick,* J., for the determination of the whole court.

*F. C. Loring,* for the plaintiffs. The plaintiffs contend that Augustine Wills was virtually a party to the charter party, and had knowledge of its existence and contents. The defendant as his agent claimed and had the benefit of the credit for freight stipulated for in the charter party. By reason of the agreement that the credit should not impair the lien for freight, the plaintiffs have the right to enforce it against the goods, or their proceeds, in the hands of Augustine Wills, or his representative; and, as they parted with possession in ignorance of a material fact, the insolvency of Wills, they are entitled to relief on the ground of accident or mistake.

Both at common law, and by express contract, the plaintiffs had a lien for freight. Parting with possession would not destroy this lien, if it was agreed that the lien should not be affected thereby. Augustine Wills, and the defendant as his agent and administrator, do not stand towards the plaintiffs in the position of *bona fide* purchasers without notice. The defendant is bound by the agreement tnat the credit should not impair the lien for freight. Whenever goods are shipped in a vessel under charter, every person receiving a bill of lading takes it subject to the obligations of the charter party, unless he is a purchaser for a valuable consideration, without notice, and such obligations are prejudicial. *Faith* v. *East India Co.* 4 B. & Ald. 630.

*Small* v. *Moates,* 9 Bing. 574. *Gledstanes* v. *Allen,* 12 C. B. 202. *Gracie* v. *Palmer,* 8 Wheat. 605, 638. *The Salem's Cargo,* Sprague's Decis. 393. *Lamb* v. *Parkman,* Ib. 353.

The defendant received some of the goods after the death of Augustine Wills, and is personally bound to regard the trust or lien by which they are affected.

*J. W. May,* ( *C. W. Storey* with him,) for the defendants.

HOAR, J. We think the evidence is quite conclusive that the cargo shipped to the defendant's intestate was delivered, not only without any assertion of a lien for the freight, or reliance upon it, but under circumstances which indicate an intention to waive the lien. This has been expressly decided in the supreme court of the United States, in a suit in admiralty, in which the present plaintiffs and defendant were parties, and by the judgment in which they are bound, affirming a like decision in the district and circuit courts. *Bags of Linseed,* 1 Black, 108. Assuming it to be doubtful whether that judgment is technically a bar to the present suit, it is at least decisive upon the point that the plaintiffs had no maritime lien upon the cargo for freight at the time that libel was filed. And unless upon the ground of fraud, accident or mistake, we do not readily perceive any ground for giving relief in equity upon a lien that has been lost by waiver ; that is, establishing an implied trust, where a direct right of property has been voluntarily relinquished.

But we need not consider the extent of the binding force of that judgment, because, to whatever extent it is open to revision, we are satisfied with its correctness. The property was delivered unconditionally, without any suggestion that it was intended to rely upon the lien. Much the larger part of it was transshipped on board another vessel, bound to a foreign market. Mr. Augustine Wills was then in good credit, and his estate at his decease was thought to be ample to meet his obligations. When payment of freight was first demanded, and refused on the ground that administration was not taken out, no suggestion of a resort to the lien was made, until the idea of a possible insolvency was entertained.

If the plaintiffs were relying upon a lien for the freight under

the bill of lading, there would seem no possible doubt that it had been waived and abandoned. But their counsel have argued that the charter party contained an express agreement for a continuance of the lien, notwithstanding the delivery of the goods, and that they have a right to insist on the provision of the charter party against the defendant; and authorities have been cited in support of this position.

These authorities go to the extent that the owner of a ship has a right to retain goods shipped by third persons under bills of lading from the charterer, until the freight is paid, if the shippers had notice of the charter party, although by the bills of lading the freight would not be payable, or would be payable so as to release the lien. But they do not authorize the conclusion that specific agreements in the charter party, providing for something more than the general lien for freight given by the mercantile law, can be enforced against third persons either in law or in equity. The defendant was not a party to the charter. The right of the plaintiffs against him was either as assignees of the bill of lading, or it was merely the paramount right of a ship owner to retain the goods until the freight was paid, against a shipper not a party to the charter. It would seem that if the plaintiffs sought to exercise the latter, they should have retained the cargo until the freight was paid; or if they meant to preserve their lien as a matter of special contract, should have given the defendant distinct notice that it was understood the contract of the charter party would be enforced against him. On the contrary, the plaintiffs took an assignment of the bills of lading, and undertook to collect them. They had taken security for the payment of the freight secured by the charter party, above the amount specified in the bills of lading. They delivered the whole cargo unconditionally, and without any mention or suggestion of a purpose to rely upon a lien. The intention to assert the lien seems to us to have been an after thought, first conceived when doubts were excited of the solvency of the estate of Augustine Wills. It had before this been waived, according to the understanding of both parties, and could not be revived

The position that the plaintiffs should have relief in equity, because they have lost their lien under a mistake of fact, cannot be supported. It does not appear from the facts agreed that the estate of the defendant's intestate was insolvent at the time the cargo was delivered. It proved to be so subsequently; but this might be, and probably was, owing to the rapid depreciation of the property in which it was invested. But where there was no fraud, that a purchaser has less ability than he or the vendor supposed, to pay for property which he had bought, would be a novel ground in equity for rescinding the bargain.

*Judgment for the defendant.*